The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Amy C. Lannard presiding. Good morning, counsel. The court is taking up case number 4241327. People of the State of Illinois v. Darian D. Davis. Counsel for the appellant, if you'll please state your name for the record. Madeline Springer from the Office of the State Appellate Defender for Mr. Darian Davis. Thank you. And counsel for the appellee? I'm Justin Nicolosi with the Appellate Prosecutor's Office representing the State of Illinois. And Mr. Nicolosi, it does appear that we do not have video any longer. We had it for a moment, but we no longer have video for you. There we go. I was in the waiting room since about 10.15, and for the first half hour, I had video in the background and everything was fine. And then at about 10.45, I lost the video and I lost the background. I was pleasantly surprised when I got in the meeting here with the court and counsel, that my video was there. But it seems to every couple minutes, it seems to go out on its own. I apologize. We'll give you time, and if at some point you cannot hear the proceedings, please just let me know. And with that, counsel for the appellant, your argument, please. Thank you. And may it please the court, counsel, again, my name is Madeline Springer, and I represent the appellant, Mr. Darian Davis. Mr. Davis had a constitutional right to have the state prove every element of the crime beyond a reasonable doubt, to not be deprived of liberty under a statute that violates due process, to self-representation, and to a fair sentencing hearing by an impartial and disinterested tribunal. But he was denied every one of those rights at the proceedings below. Today, I'll be focusing on four of the five issues in the briefs, but I'm happy to answer any of the questions the court may have. I'd like to begin by first addressing the two issues that address aggravated street racing. For necessary background, the state provided jurors with only two of the six definitions of street racing provided under the statute. Therefore, this court should reverse outright if it agrees with both issues. First, the state did not prove Section C-1 beyond a reasonable doubt. And second, that Section C-3 is unconstitutional. Turning to the first issue, the state had insufficient evidence to prove Darian Davis guilty under Section C-1 of the street racing statute, which defined street racing as the operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to outdistance each other. And the state must prove every ingredient of an offense beyond a reasonable doubt, and it may not shift the burden of proof to the defendant by presuming one ingredient upon proof of the others. But that's exactly what the state did here, using evidence that two cars were operating at a point side by side at accelerating speeds to prove the final element, but they were doing so in a competitive attempt to outdistance the other. But there was no evidence of a competitive attempt. Neither car ran a red light, neither car blew through a stop sign, neither car drove onto the shoulder to pass the other. In fact, the judge here described classic signs of a street race, two drivers glancing over each other at a stoplight, someone revs their engine, but there wasn't even evidence of that here either. Nothing shows that Davis even noticed the white car, and body-worn camera shows Davis asking about the people in the Mitsubishi, not the white car. The state's evidence only shows that two cars are speeding on a street where cars commonly speed. And thus, no reasonable juror could find Davis was competing with the unknown- Were cars commonly speeding at 138 miles an hour? Cars commonly speed on that street. And again, when we look- At 138 miles an hour? We don't know that, but we don't have any evidence that they were driving, but Mr. Davis even noticed the white car. And again, we can't use evidence that they're driving at accelerating speeds side-by-side to presume that there is a competitive attempt. My question was just whether they commonly speed at 130-some miles an hour. That's not in the record. We don't know. We just know that they commonly speed. And that brings us then to the second issue, which is directly also related to aggravated street racing, which is the constitutionality of Section C-3. Section C-3 defines street racing so broadly that it violates due process in two unique ways. First, by imposing a criminal penalty for wholly innocent conduct, and second, by being impermissibly vague in all applications. Counsel, before you go into that particular argument, I just want to clarify a few things from the record. You're not challenging the jury instruction that was given at this time on appeal, correct? I'm not. Okay. And so the jury instruction, in fact, included the definitions from C-1 and C-3, correct? Yes, Your Honor. And in essence, didn't the defendant acquiesce to the inclusion of both definitions in those jury instructions? Yes, Your Honor, and I'm not challenging that as an issue. And so could, since there is nothing, you know, the jury did not render any verdict with regards to a particular subsection.  So if the state meets its burden on C-1, if there's sufficient evidence there, we don't know whether the jury found under C-1 or C-3, is that correct? Yes, Your Honor. Thank you. I just wanted to clarify that. You may continue with your argument. So when we look at Section C-3, again, it violates due process in two ways. First, because it imposes a criminal penalty for wholly innocent conduct. And second, by being impermissibly vague in all applications. So looking first to how it's overbroad. It punishes, again, wholly innocent conduct without requiring a culpable mental state, and it therefore is not a reasonable means of reducing the number of fatalities caused by street racing. And that's because the legislature's use of the phrase out-gain or out-distance, and also the fact that Section C-3 is the definition of racing, it sweeps in and punishes innocent conduct. And that's true regardless of however this court chooses to handle the mental state. And I want to address that. There's three different scenarios, three different ways in which this court can address the mental state. But first, it's easiest for me to then address those if I explain out-gain and out-distance and the fact that because the legislature wrote Section C-3 as the definition of street racing, that it punishes innocent conduct. So the words out-gain and out-distance, they're unambiguous. If we use the definitions of out-gain and the definition of out-distance provided during briefing, then the statute becomes, requires the state to prove that one or more car vehicles, using an attempt to gain more than or go far ahead of, in parentheses, as in race, another vehicle. So by placing the word race before as in, which means for instance, such as, and inside of parentheses, the word race serves as just one instance of out-distance, meaning it's not limited to just racing. It includes racing, but it also includes innocent conduct. A court in people, a court in Florida, People v. Wells, found a similarly worded statute that used the words out-gain and out-distance encompasses an endless range of otherwise legal conduct. And that includes passing, accelerating from, accelerating from a stop. And in Illinois, that also includes conduct that is expressly permitted by the vehicle code, including using a left lane for passing. And even so, Section C-3 is the definition of racing. So to insert a general definition or one of the other five definitions would destroy the legislature's clear intent to have six unique scenarios, six unique situations in which they want to punish street racing. So first, Section C-3 is going now turning to the three different possible ways this court can interpret the mental state, does not remedy the issue. So first, Section C-3 is an absolute liability defense for the same reason outlined in People v. Avery. Like the DUI statute, Section C-3 requires no mental state and is a Class A misdemeanor that increases to a Class 4 felony under aggravating circumstances, with no sign that the legislature intended to add a mental state. And also the street racing statute aims to advance a very important public policy, which is to prevent fatalities caused by street racing, which is more important than the theft prevention in Tolliver and Gaine, and more important than rendering aid and providing information to victims of accidents and none. So Section C-3 aims to prevent those accidents. And if this court finds that this is an absolute liability offense, the Illinois Supreme Court won't read in an implied mental state. And again, this then sweeps in innocent conduct driving past any car on a multi-lane road. I'm sorry, was there a question? I don't believe so. Thank you. Thank you. Second, if this court finds that C-3 is not an absolute liability defense and finds that attempt is the mental state requirement, it still should not read in an implied mental state, because then looking to the plain and ordinary meaning, an attempt means to just make an effort to, which doesn't remedy the fact that this sweeps in innocent conduct. And Illinois has repeatedly declined the Illinois Supreme Court multiple times to read a criminal purpose into a statute where it already contains a mental state element. So then third, if this court finds that C-3 is not an absolute liability defense and finds that there's no mental state at all, there is no implied mental state that will remedy the situation without negating the legislature's clear intent and the rules of statutory interpretation. Because if we read in criminal purpose, what is the criminal aspect? It's racing. But again, Section C-3 is the definition of racing and it includes innocent conduct. And again, to use a general definition or one of the others would destroy that clear legislative intent. And at the end of the day, that's what we do when we're looking at how to interpret these statutes and apply them. Purpose of comparing speeds and a competitive attempt, also those are included in Section C-1 and C-2. And so the Illinois Supreme Court also follows the rule that when the legislature includes a particular mental state in one section of a statute, but not the other, or language, the legislature acted intentionally and intended different meanings to result. And even so, if the court does read in an implied mental state of a competition or of purpose of comparing speeds for the same reasons we articulated earlier, the state never proved that here. So Section C-3 punishes innocent conduct and it violates due process. Alternatively, Section C-3 is unconstitutional by being impermissibly vague in all applications. And the statute that includes here, where the evidence only proves that Mr. Davis was speeding and not racing. And people view Wells, a Florida court, found a similar statute unconstitutionally vague as applied to the defendant, where he was driving 130 miles per hour in front of another car, going a similar speed, weaving through traffic. The vehicles eventually slowed, pulled side by side, and accelerated back up to 90 before police stopped and arrested them for racing. And the court found that under those facts, it was unclear whether he was racing or whether he was simply speeding. And the same is true here. Section C-3 is unconstitutionally vague as written, and therefore this court should reverse Mr. Davis's aggravated street racing conviction outright. The third issue I'd like to talk about is the pro se request. So judge failed to honor Mr. Davis's request to proceed pro se in violation of the Sixth Amendment and Supreme Court Rule 401. Davis made his request at the hearing addressing defense counsel's motion to withdraw. And almost as soon as the hearing began, and before giving Davis a chance to speak, the judge mocked Davis for filing handwritten motions as if he's a lawyer, accused him of trying to urinate in his own punch bowl, asked him if his goal was to make everybody hate him, and told Davis that he was not interested in whatever grenades he's throwing in the road here. But after Davis explained his frustrations with his private attorney, and the judge refused to request his public, refused his request for a public defender, Davis said, then that means I'm going pro se. His request for self-representation was clear, and it was unequivocal, and the judge knew that. Mr. Davis had been filing pro se motions. Counsel, though, counsel, if I may, immediately after that, though, doesn't he then, doesn't the defendant's statement then, if that's the case, then that's a breach of contract. She's withdrawing. I didn't fire her. She is withdrawing. Couldn't that be considered an equivocation of his request to waive counsel? Almost. So, Your Honor, a request is not equivocal merely because it's conditional. And even here, it was clear to the judge that he, this was sincere also in that he was, had been filing pro se motions, and now he was upset with his attorney to the point where he felt that her withdrawing was a huge issue. He did not want to proceed with her anymore because of that. And also, he was asking for his $4,500 that he already paid her back. And the fact that he wanted that money back, it doesn't then mean that he doesn't want to go pro se. So, the judge... You don't think it meant he wanted to use the money to possibly hire different counsel or have a public defender? Well, in Williams v. Bartlett, one of the cases that the state cited, the Second Circuit noted that a conditional request is not unequivocal even where it's being used as a threat to obtain private counsel. So, the main issue here is that he clearly conveyed a request, and what the judge should have done is followed this court's instructions and people v. Fisher, which held that because it's structural error, the judge should have gone further by asking the defendant outright if he still wanted to represent himself, or if maybe dependent on whether or not he wants, the judge will grant him a refund if that matters. Because the judge here, it didn't matter, gets to say, we aren't giving you a refund. We're not. We are. That's an issue I'm not deciding. And so, you still, though, have a right to go pro se. Do you want to do that, regardless of if you ever get a refund? But the judge cut him off, didn't ask him any questions, didn't let him clarify. And it's very similar to the same thing that happened... If he ever raised the request again? Well, independent of itself, this is the violation. And this happened a couple weeks ago. Did he ever raise the... Did he ever make the request again? No, but he doesn't need to. If we look at Ferretta, he didn't raise it again. It's been... U.S. Supreme Court precedents say that they don't need to. And this is really... Even if they act inconsistently? Even if they act inconsistently with that initial request? Yeah, because here, he didn't act... The answer is yes, even if they act inconsistently with that request. Yes, because here, here, when we look, it was never clarified. He made it clear, an unequivocal request, and the judge cut him off and did not let him keep speaking. Again, the fact that he potentially wanted a refund has nothing to do with the fact that he has a right to self-representation. And it's very similar to... In Davis's previous appeal, this court remanded for a new Crankville hearing, finding that not only did the judge fail to inquire into Mr. Davis's claim that his attorney was ineffective, but he seemed to hold it against him. And here, at the very beginning of the hearing, he assumed that counsel's motion to withdraw was Mr. Davis's fault. He cut off counsel when she was beginning to talk about it and said, I'm sorry, let me interrupt. I'm just assuming that this is Mr. Davis, but it wasn't. Mr. Davis had previously filed an ARDC complaint against his and then his attorney immediately filed a motion to withdraw. And at the next hearing, if we want to talk about subsequent content, Mr. Davis again said, I think it's a violation of my rights to have to go forward with her when she tried to withdraw. It's not fair. I'm not going to get a fair representation. And we actually see that if we turn to the sentencing issue, where his counsel fails to file a motion to reconsider, claiming specifically that Mr. Davis wants to go straight to appeal. But in this motion, at this court date where he makes the pro se request, he makes clear that one of his biggest fears with going on forward with current counsel is that she might waive meritorious issues that won't then be able to be considered on appeal. And when she chose not to file a motion to reconsider, strictly because Davis said he wants to go straight forward with the appeal, she forfeited any potential issues for sentencing. And she is the attorney. She's the one with the legal knowledge. And whether or not to file a motion for new trial is not an issue that a defendant gets to decide. It's her. So again, the fact he's made an unequivocal clear request, he had been filing pro se motions, he was ready to put on his own defense. The judge never did what this court instructed at Fisher. And therefore, considering the facts and circumstances known to the judge, his refusal to engage with Davis's unmistakable pro se request amounts to plain error and violation of Davis's Sixth Amendment right to representation. A right that's as basic and fundamental as the right to representation by counsel itself. Turning finally to the sentencing issue, I would like to highlight the judge Lyons committed three separate and distinct errors at sentencing, alone each error rendered Davis's sentencing hearing unfair, and alone each error demands a new sentencing. And all of the errors, though, also, though, relate and emphasize each other. For example. So for clarity counsel, you're making an argument also that the cumulative effect of those errors, alleged errors should be considered. Yes, Your Honor. Correct. And then on the sentencing, because of the limited time, the court statement about the Martin case, I just want to confirm only occurred after the defendant raised the issue of Martin multiple times throughout the pendency of the case, correct? Correct. Okay. I see that. I believe that does conclude your time. You'll have time in rebuttal. Thank you. Council for happily your argument, please. Morning, Your Honors. Again, my name is Justin Nicolosi. I represent the state of Illinois in this matter. The overall submits that this court could affirm the defendant's convictions and sentences in this case. As Justice Lannert alluded to when questioning Ms. Springer, the jury was given two different definitions of street racing. And as defendant in her brief concedes, the defendant needs to succeed on both issues one and issue two to ultimately obtain relief from this court. And if the defendant can't establish that he was not proven beyond guilty of aggravated street racing beyond a reasonable doubt under C1, then he cannot succeed in this appeal. And the state submits that, of course, if this court can decide an issue without addressing the constitutional topic that was presented, it should do so. And of course, I'm not conceding anything on issue one, the constitutionality of C3. I will get to that in a minute. But the state strongly submits that any rational jury would have found the guilty of aggravated street racing on C1. The evidence is clear here that the facts pertain to C1 much more than they do to C3. In all honesty, I don't even know why C3 was submitted in this case as an as clearly that I think that the strongest piece of evidence against the defendant in this case was the Hewitt office video. We've all seen the video. We see three cars as I believe Mr. Hewitt goes out to his car about 11 o'clock at night. We see three cars drive past, you know, at certain speeds. And then short time later, we see the two cars, the dark car and the light car driving at a higher rate of speed than the three cars that preceded them. And of course, we see other videos and the audio and aftermath of this. But state submits that based on the Hewitt office video alone, any rational jury have concluded that these cars were in a competitive attempt to out gain or out distance C1. There's just no other reasonable conclusion that one can draw. I mean, the defendant tries to argue that it's coincidence and it just happened to be driving at an outrageous speed up to over 130 miles an hour. Just coincidentally, the jury doesn't have to leave their common sense at the door. And in fact, they're not to do that. None of us have to do that either. There's only one conclusion that the state submits that this court and that any rational jury. I'm guilty. Based on that, the state submits that this court should throw out issue one because it's essentially moot, as I argued in my brief, because there's enough here on C1. If this court reaches the issue presented in issue one regarding C3 and its constitutionality, the state submits that the court should find that the subsection does not violate the process. As I argued in my brief, the comments to 4-9 talk about how a mental state is not expressly listed at the court's required to read into that if certain circumstances are met. It talks about whether it's a misdemeanor and if there's a punishment of less than $500 fine and also whether or not the legislature, Wesley, indicates that this is supposed to be an liability offense. All those boxes in this case is clearly a significant offense, even if the simple violation of street racing itself is a class A misdemeanor, as I quote in my brief, substantial penalties. So the state submits all those factors exist here to lead to the conclusion that the legislature did not mean for this to be an absolute liability offense. It submits that this court should read into that statute the implied element of intent. And again, as I argued previously, the evidence in this case establishes intent. I think regarding the constitutionality, we're talking about over breadth and vagueness. The state submits with considering the implied element of intent into the statute. It takes care of both of those questions that the defendant raises. Again, we're also in the street racing statute in general, and the court cannot ignore that fact. So the state, again, I argued all this in my brief, and the state submits that regarding issue one and two, that this court would find in the state's favor that conviction for aggravated street racing should be affirmed. Moving on to issue three, whether or not he made a clear and unambiguous mandate to go to represent himself, the state submits that the court will properly provide any such request. I argued a couple of cases, a federal cases in my brief, Reese v. Nix and Jackson v. Ilst. And the state submits that those cases are actually very similar to what happened in this case. I think the record shows the defendant was nearly frustrated that counsel's motion was not going to be granted. He asked for another public defender. The court said, no, I wasn't going to do that. And then he said he wanted to go pro se. The state believes he was just frustrated. I think the record was clear on that. He didn't request to go pro se before that. He didn't really request it after. In the next hearing, he did complain about potential conflict from counsel, but didn't reassert his desire to go pro se. He essentially acquiesced in moving forward with Patton at trial. And I guess, counsel, though, if you can specifically address some of the cases that the appellant cites, though, because the specific language that he used was that he would go pro se then. And so why, just using the words alone, should this court not consider that an unequivocal request? Your Honor, again, I'm going to focus on the cases that I cited more so, Reese v. Nix and Jackson v. Ilst, where the same thing happened. And then based on the words that were used, wanted to go pro se. The courts in those cases basically explain it's more than just the language used. Again, excuse me, counsel, Justice Lanard just asked you a specific question to address specific cases. Now, you either should say, I'm not in position to do that, or I don't remember them, or, but to say that you're just going to go ahead and consider your cases, she may be more, she's not maybe, she is way more polite than I am. But if I asked you to address specific cases, I expect you to either respond that you can't or unable to, but not simply that you won't. I'm sorry, Your Honor. No disrespect to the court or the questions. I am not well versed in the cases at this point that defense counsel has cited. I would, I'm certainly more comfortable in explaining why I believe this case is more similar to my cases that I cite in my brief and distinguishing counsels. I've always been under the impression that every case can be distinguished or favorably to, you know, to do that all day. I just simply desire to focus on the cases that I cite and why I believe this case falls perfectly in line. Your desire isn't relevant at this point. I understand. So, I guess, Justice Lanard, I apologize to answer your question. I cannot right now, as I have not re-reviewed those cases in preparation for this argument. There you go. That's a reasonable response. I apologize to the public. I certainly meant no disrespect or flippance or anything of that regard. Thank you. So, that's where I stand on this particular issue. I just believe facts of this case are in line with the cases that I cited. And based on the fact that I think reading the transcript clearly showed that the defendant was just merely frustrated that he didn't get his particular wish for counsel to get her wish at that point. That's why he said he wanted to go pro se. And that is not uncommon. And courts have found that the defendant's desire at that point was not a clear and unequivocal desire. It was born out of mere frustration. And that's why the court was proper, in this case, to move on and deny the defendant that he wanted. Regarding issue four of sentencing, at the outset, the state submits that clearly the trial sentencing court said things that he probably should not have said. But, of course, Bullard v. Martin, as Justice Lanard had stated, that was not an improper comment. The defendant was the one who wrote that particular topic. And regarding things about street racing cases in general and other items that the defendant argues in his brief, the record on the whole does not indicate that the court sentenced the defendant based on those particular items. And I think the court focused on mostly the severity of the crimes in this case, which, of course, that's the most important sentencing factor. And this case wouldn't have been more serious and horrible, of course, to the victims, both the deceased victims and their families and the living victim and her family. Again, as I argued in my brief, the defendant did not receive the highest possible sentences. There was some more room there for the judge to sentence the defendant more severely, but the court did not do so. That is evidence that the sentencing judge was not overly biased or harsh towards the defendant. Again, we have to point out the seriousness of the offense here. And again, the comments the court made, some of them probably went too far. I'm certainly not going to argue that the court was entirely proper in every word that the court said. I don't believe that the sentence here was an abuse of discretion. And I think that the record supports the sentence that was issued in this case. So if there are any other questions for any issues that this court has, I'd be happy to answer them. And I will directly answer the questions that are asked. Thank you, counsel. Seeing none, counsel for the appellant, rebuttal argument, please. Your Honor, on rebuttal, I would like to focus on the fact that seriousness of the offense does not negate the fact that the judge made three clear, unique, separate errors. It doesn't mean that he gets to rely on facts outside of the record. It doesn't mean that he gets to belittle Mr. Davis throughout proceedings or focus so much of his sentencing rationale on Mr. Davis' allocution statement, an allocution statement in which he spent ample time talking about the harm that he caused, saying that he was going to have to live with it for the rest of his life, considering the families of the people that he hurt. But again, because the judge had held bias for Mr. Davis, he took the fact that he was apologizing, that he was exercising his constitutional right to make claims about his trial counsel and put on a defense against him. And it also does not negate the fact that this judge took it upon himself to emphasize an improper factor in aggravation that the state itself did not raise. And the state, on appeal in its brief, conceded that the judge here relied on an improper factor and only said, but he didn't give it any weight. However, one, the fact that he brought it up himself, I think, means he gave it weight in and of itself. And second, he verbatim said, it's not like I could forget that this happened. And the state said, oops, I forgot to bring that up. So, all of these factors together, they emphasize an unfair impartial, unfair trial, I mean, unfair sentencing led by a judge who clearly felt a personal way about this offense and this client. The errors also, again, related to each other. The fact that this judge brought up aggravation, but the state forgot, emphasizes this bias. The fact that the state began his rationale for sentencing by passionately describing his time as a prosecutor emphasizes the fact that it rendered the sentencing unfair. It made a judge who is supposed to be, above all else, an impartial arbitrator, made him look like he was working with the state against Mr. Davis. And for those reasons, unless the court has any questions, we respectfully ask that this court grant the relief requested in the briefs. Thank you so much. Thank counsel for their arguments today. The court will take the matter under advisement and the court stands in recess.